UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BANK OF RUSTON | CIVIL ACTION |
| VERSUS | NO: 17-8738 |
| RONALD RAY CARDWELL, ET AL. | SECTION: "J"(1) |

## ORDER AND REASONS

Before the Court are two *Motions for Summary Judgment* **(R. Docs. 18, 30)** filed by Plaintiff, Bank of Ruston ("the Bank"). Defendant, United States of America ("Federal Defendant"), opposes both motions **(R. Docs. 22, 31)**. The Bank filed replies **(R. Docs. 25, 34)**. Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that pursuant to Federal Rule of Civil Procedure 56(f), the Bank's motions should be **DENIED** and that summary judgment in favor of Federal Defendant should be **GRANTED**.[1]

## FACTS AND PROCEDURAL BACKGROUND

This litigation derives from the purported sale of 565 Lotus Drive, North, in Mandeville, Louisiana ("the Property") on August 17, 2012, from the Justin Patrick Cardwell and Jordan Canterbury Cardwell Testamentary Trust ("the Trust") to Ronald Ray Cardwell ("Trustee Cardwell" or "Cardwell") and his wife, Debra.

---

[1] *See E.C. Ernst, Inc. v. Gen. Motors Corp.*, 537 F.2d 105, 109 (5th Cir. 1976) (noting that summary judgment in favor of a non-moving party is appropriate where all material facts are before the court and the moving party has been given a full and fair opportunity to dispute the facts alleged by his adversary). Not only are all material facts before the Court, but Federal Defendant's opposition specifically requested that the Court render summary judgment in its favor, and the Bank was granted leave to file a reply to Federal Defendant's opposition memoranda.

On August 25, 2005, Cardwell was indicted for Mail Fraud and Bank Fraud and conspiracy to commit same with his wife against First National Bank in Ruston. **(R. Doc. 22, at 2-3)**. Cardwell pleaded guilty to one count of Bank Fraud. **(R. Doc. 22, at 3)**. On December 5, 2006, he was sentenced to serve jail time and make restitution to First National Bank in the principal amount of $162,440.78. **(R. Doc. 22, at 3)**. On April 27, 2007, the United States recorded the judgment as a lien against Cardwell in the mortgage and conveyance records of St. Tammany Parish. **(R. Doc. 22, at 3)**. On March 16, 2007, the United States Attorney's Office for the Western District of Louisiana obtained a judgment against Cardwell, individually, in the amount of $162,440.78 for restitution pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1963. **(R. Doc. 18-1, at 4)**.

While Cardwell's criminal proceedings were underway, his father, Pat Ray Cardwell, established a testamentary trust in favor of his grandsons, Justin Patrick Cardwell and Jordan Canterbury Cardwell ("Justin" and "Jordan"), and named Ronald Ray Cardwell as the trustee. **(R. Doc. 18-1, at 3)**. The Trust became effective upon Pat Ray Cardwell's death on April 30, 2007. **(R. Doc. 18-1, at 3)**. Cardwell is the sole trustee and Justin and Jordan are the sole income and principal beneficiaries of the Trust. **(R. Doc. 18-1, at 3)**.

On September 10, 2007, the Trust acquired the Property from Cecil A. Collins and Sharon L. Collins. **(*See* R. Doc. 18-4)**. Bank of Ruston ("the Bank") loaned the

Trust $244,115.03 to finance the purchase.[2] **(R. Doc. 18-1, at 3)**. The loan was secured by a mortgage in favor of the Bank and encumbering the Property, and Cardwell signed a promissory note in his capacity as trustee. **(R. Doc. 18-1, at 3-4)**. The mortgage was recorded with the Clerk of Court of St. Tammany Parish on September 11, 2007. **(R. Doc. 18-1, at 4)**.

On June 23, 2009, the IRS levied a federal tax lien against Cardwell, individually, in the principal amount of $19,011.00 ("the IRS Lien"). **(R. Doc. 18-1, at 4)**. On July 27, 2010, Asset Acceptance, L.L.C. ("Asset") obtained a judgment against Cardwell, individually, in the principal amount of $6,133.43, plus interest, costs, and attorney's fees ("the Asset Lien"). **(R. Doc. 18-1, at 4)**.

On August 17, 2012, Trustee Cardwell purported to sell the Property from the Trust to himself and his wife, Debra. **(*See* R. Doc. 18-9)**. The act of sale was recorded in the conveyance records of St. Tammany Parish the same day. **(R. Doc. 22, at 4)**. The Bank's mortgage prohibited the Trust from transferring the Property without the Bank's consent, but the Bank did not consent to the transfer. **(R. Doc. 18-1, at 4)**.

On April 16, 2016, the Bank filed suit against Cardwell in the Twenty Second Judicial District Court of Louisiana to enforce the mortgage on the Property. **(R. Doc. 18-1, at 1)**. On July 21, 2016, the court rendered judgment in favor of the Bank against the Trust in the amount of $91,470.62, plus 25 percent attorney's fees,

---

[2] In addition to the loan transaction on September 11, 2007, for which the Bank obtained a title insurance policy, the Bank also made loan transactions with Cardwell on November 23, 2009 (no title insurance), December 15, 2010 (obtained title insurance), and December 30, 2013 (no title insurance). (*See* **R. Doc. 22, at 3**).

3

contract interest of 12 percent per annum from the date of judicial demand until judgment, and legal interest therein from the date of judgment until paid and all costs of those proceedings. **(R. Doc. 18-1, at 1-2)**. A writ of fifa was issued for the seizure of the Property, and a sale to satisfy the Bank's judgment was set to be held on January 18, 2017. **(R. Doc. 18-1, at 2)**. However, before the sale could occur, the Sheriff notified counsel for the Bank that Cardwell had individually purchased the Property from the Trust on August 17, 2012. **(R. Doc. 18-1, at 2)**. Additionally, individual judgment creditors of Cardwell—including Federal Defendant and Asset— were identified as holding secured interests in the Property, impeding the Bank's ability to have the Property sold to satisfy the judgment against the Trust. **(R. Doc. 18-1, at 2)**.

Thereafter, the Bank filed the above-captioned matter in the Twenty Second Judicial District Court of Louisiana against Cardwell (in his individual capacity and as trustee of the Trust), Debra Canterbury Cardwell, Federal Defendant, and Asset, seeking to annul the August 17, 2012 sale ("the Sale") of the Property by the Trust to Cardwell. **(R. Doc. 18-1, at 2)**. Federal Defendant removed the case to federal court. **(R. Doc. 1)**.

On June 13, 2018, the Bank filed a *Rule 56 Motion for Summary Judgment* seeking a declaration that the Sale is null and void. **(*See* R. Doc. 18)**. Federal Defendant opposed the motion **(*See* R. Doc. 22)**, and the Bank filed a reply **(*See* R. Doc. 25)**. On August 28, 2018, the Bank filed a *Rule 56 Motion for Summary Judgment* seeking summary judgment on alternative grounds. **(*See* R. Doc. 30)**.

4

Specifically, if this Court determines that the Sale is not a nullity, the Bank asks that this Court rule that the Bank's mortgage is the superior security interest on the Property. **(*See* R. Doc. 30)**. Federal Defendant opposed the motion **(*See* R. Doc. 31)**, and the Bank filed a reply **(*See* R. Doc. 34)**.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving

5

party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## **PARTIES' ARGUMENTS**

In its first *Motion for Summary Judgment*, the Bank first argues that the Sale is an absolute nullity. **(R. Doc. 18-1, at 5)**. The Bank points to Article 2085 of the Louisiana Trust Code, which prohibits self-dealing by the trustee. **(R. Doc. 18-1, at 6)**. The Bank argues that the language of the Trust instrument does not suggest that the settlor, Pat Ray Cardwell, intended to circumvent Article 2085 and allow Trustee Cardwell, to engage in self-dealing and sell trust property to himself. **(R. Doc. 18-1, at 6)**. Accordingly, the Bank argues that the Sale is absolutely null because it violates the Louisiana Trust Code and the language of the Trust instrument. **(R. Doc. 18-1, at 7)**. Alternatively, the Bank argues that the Sale is null and void because it is a

6

relative nullity. **(R. Doc. 18-1, at 7)**. The Bank asserts that its action to have the Sale declared null is timely because it was brought within five years of the date of the Sale. **(R. Doc. 18-1, at 8)**. The Bank argues that it has standing to assert the relative nullity of the Sale pursuant to Louisiana Revised Statute 9:55382, which provides in pertinent part that "[t]he holder of a conventional mortgage shall have the same rights, privileges, and actions as the mortgagor land owner to recover against any person who, without the written consent of the mortgagee … sells … any … immovable covered by the mortgage." **(R. Doc. 18-1, at 8)**.

Federal Defendant asserts four arguments in opposition to the Bank's motion. **(R. Doc. 22)**. First, Federal Defendant argues that the Sale was allowed under the terms of the Trust. **(R. Doc. 22, at 5)**. Federal Defendant acknowledges that the authority conferred upon the Trustee in the Trust instrument begins with general yet very broad empowering terminology,[3] but the ensuing provisions endow the Trustee with more specific powers. **(R. Doc. 22, at 5)**. Federal Defendant points to the following language in the Trust instrument:

> F.   The Trustee shall have the power to invest, reinvest, to change the nature of the investments … as the Trustee may, in his sole and uncontrollable discretion deem advisable;
>
> H.   The Trustee hereunder shall be subject to all of the duties imposed upon Trustees and shall have to the fullest extent possible, all of the powers granted to Trustees under the Trust Law of the State … Without limitation … the Trustee is expressly given the power to do and

---

[3] "C.   In the administration of this Trust, the Trustee shall have all of the powers that may be conferred upon a Trustee pursuant to the provisions of the laws of Louisiana, relative to Trusts, including but not limited to, all of the powers that may be conferred upon a Trustee pursuant to Part V of the Louisiana Trust Code…." **(R. Doc. 18-3, at 2)**.

> perform any of the following in his discretion and without the necessity of any order or authorization of court;
>
> L. To purchase, sell, exchange, partition or otherwise acquire and dispose of trust property; at public or private sale for such purposes and upon such terms, as the Trustee may deem appropriate.

**(R. Doc. 18-3, at 3)**. Based on this language, Federal Defendant avers that Cardwell was authorized to sell the Property to himself at a private sale for whatever purpose(s) he may deem appropriate. **(R. Doc. 22, at 6)**.

Second, Federal Defendant argues that even if the Sale constitutes an act of unauthorized self-dealing, it is not an absolute nullity. **(R. Doc. 22, at 7)**. Federal Defendant distinguishes a trustee's act of self-dealing from the types of illicit or immoral objects that Louisiana Civil Code Article 2030 is aimed at nullifying. **(R. Doc. 22, at 7)**. Federal Defendant points out that only two of the Louisiana cases applying Article 2030 involve trusts.[4] **(R. Doc. 22, at 9)**. Federal Defendant argues that unlike these two cases focusing on Sections 2021 and 2025 of the Louisiana Trust Code (trust indestructibility), the case at bar concerns Articles 9:2084 and 9:2085, which establish the duties of a trustee for the protection of the trust beneficiary. **(R. Doc. 22, at 9)**. Federal Defendant asserts that a violation of Articles 2084 and 2085

---

[4] In *Albritton v. Albritton*, 600 So.2d 1328 (La. 1992), the trustee and a minor beneficiary signed an agreement purporting to extend the term of the trust in contravention of the settlor's clear intent. **(R. Doc. 22, at 8)**. Federal Defendant notes that in concluding that the extension was an absolute nullity, the Louisiana Supreme Court declared that "[t]he trust would hardly be a stable device for the transmission of property if the beneficiaries and trustees could make agreements that could modify the settlor's fundamental intent in setting up the trust." **(R. Doc. 22, at 8)**. In *J-W Operating Company v. Olsen*, 130 So.2d 1017 (La. App. 2 Cir. 2014), Federal Defendant avers that the court declared as absolutely null the sale of an oil and gas lease by a trustee from a spendthrift trust whose settlor and sole beneficiary in the trust language declared the trust to be irrevocable and prohibited "any action to modify or negate Settlor's intended effect of protecting the properties and assets transferred to the Trust[.]" **(R. Doc. 22, at 9)**.

is defined in the Louisiana Trust Code as a breach of trust, not as an absolute nullity. **(R. Doc. 22, at 10)**.

Third, Federal Defendant argues that the Sale is not a relative nullity and, even if it were, the Bank lacks standing to raise the issue of nullity. **(R. Doc. 22, at 11)**. Federal Defendant avers that if the language of the Trust did not permit Trustee Cardwell to engage in self-dealing, then the Sale constitutes a breach of Trust and an action for remedy against Trustee Cardwell is available only to the trust beneficiaries pursuant to Article 2221 of the Trust Code. **(R. Doc. 22, at 11)**. Federal Defendant argues that the Bank lacks standing to assert a right of the trust beneficiaries because the Trust Code only allows a trust beneficiary whose interest is affected by a breach of trust to maintain an action for breach. **(R. Doc. 22, at 13)**. Additionally, Federal Defendant argues that the Bank cannot rely on Louisiana Revised Statute 9:5382[5] to assert that it has standing because the trust beneficiaries do not have title in the Property at present. **(R. Doc. 22, at 14)**. Federal Defendant also argues that even if the Bank could assert an action for breach of trust on behalf of the trust beneficiaries, an action to annul the Sale as a relative nullity has likely prescribed under Louisiana Revised Statute 9:2234, which sets forth a two-year prescriptive period and a three-year preemptive period for any act, omission, or breach of duty by a trustee. **(R. Doc. 22, at 16)**.

---

[5] "The holder of a conventional mortgage shall have the same rights, privileges, and actions as the mortgagor land owner to recover against any person who, without the written consent of the mortgagee, buys, sells, cuts, removes, holds, disposes of, changes the form of, or otherwise converts to the use of himself or another, any trees, buildings, or other immovable covered by the mortgage. Recovery by the mortgagee may not be for more than the unpaid portion of the secured indebtedness, plus interest, advances, court costs, and attorney's fees, provided such recovery may be had severally or jointly with the mortgagor land owner." La. R.S. 9:5382.

Finally, Federal Defendant argues that its MVRA lien is entitled to primary lien treatment and outranks the Bank's mortgage. **(R. Doc. 22, at 17)**. Federal Defendant asserts that under U.S.C. § 3613, the MVRA makes restitution mandatory for certain crimes, including any offense committed by fraud or deceit, and authorizes the United States to enforce a restitution order in accordance with its civil enforcement powers. **(R. Doc. 22, at 17)**. Federal Defendant states that an order for payment of restitution becomes a lien on all property and rights to property of the defendant upon entry of judgment pursuant to 18 U.S.C. § 3613(c). **(R. Doc. 22, at 18)**. Federal Defendant avers that this occurred on December 5, 2006. **(R. Doc. 22, at 18)**. Pursuant to 18 U.S.C. § 3613(d) and 26 U.S.C. § 6323(f), the lien is subsequently perfected when a notice of lien is filed. **(R. Doc. 22, at 18)**. Federal Defendant asserts that this occurred on April 27, 2007. **(R. Doc. 22, at 18)**. Given that the earliest date the Bank's mortgage arose is September 11, 2007, Federal Defendant concludes that its lien under the MVRA primes the Bank's mortgage. **(R. Doc. 22, at 18-19)**.

In reply to Federal Defendant's opposition, the Bank first argues that the Trust language relied upon by Federal Defendant is insufficient to confer authority to self-deal.[6] **(R. Doc. 25, at 3)**. The Bank next re-urges its assertion that the Sale is an absolute nullity because it was not permitted by the language of the Trust instrument

---

[6] The Bank notes that in *Noel v. Noel*, 225 So. 3d 1114 (La. App. 3 Cir. 2017), the court found that a power of attorney containing the following language was insufficient to authorize self-dealing: "To sell, transfer, assign and convey to any and all person or persons or corporations, institutions, with all legal warranties, all or any parts of the real, personal or mixed estate of the Constituent, either judicially or extra judicially, for such price and upon such terms and conditions that the said Attorney may think fit; to receive the price of such sales, and to grant receipt and acquittance therefore." **(R. Doc. 25, at 3)**.

or authorized by a court. **(R. Doc. 25, at 4)**. Alternatively, the Bank argues that the Sale is a relative nullity, and the Trust has standing to bring an action to regain title to the property at issue because the Property will revert back to the Trust if this Court declares the Sale to be relatively null. **(R. Doc. 25, at 7-8)**. The Bank argues that it has standing to assert a claim for relative nullity on behalf of Trustee Cardwell pursuant to Section 5382. **(R. Doc. 25, at 8)**. The Bank also notes that Louisiana Revised Statute 9:2234 is inapplicable because the Bank is not asserting a claim against Trustee Cardwell for breach of duty. **(R. Doc. 25, at 10)**. Thus, the Bank argues that its action to nullify the Sale is not prescribed, as the applicable prescriptive period under Louisiana Civil Code Article 2032 is five years. **(R. Doc. 25, at 10)**. Finally, the Bank declines to address Federal Defendant's argument that its MVRA lien outranks the Bank's mortgage, noting that "this motion is limited to a requested declaration that the Purported Sale is null." **(R. Doc. 25, at 10)**.

In its second *Motion for Summary Judgment*, the Bank seeks a declaration that its mortgage is superior to the liens of Federal Defendant, the IRS, and Asset if this Court determines that the Sale is not a nullity.[7] **(R. Doc. 30-1)**. The Bank argues that a state lien takes priority over a federal lien under 26 U.S.C. § 6321[8] et seq. when the state lien attaches to the property and becomes choate prior to the federal lien

---

[7] The Bank asserts that its motion for summary judgment involves the ranking of four liens: (1) The Bank's collateral mortgage granted by the Trust dated September 10, 2007 and recorded in St. Tammany Parish on September 11, 2007; (2) A restitution judgment in favor of the Western District of Louisiana against Trustee Cardwell, individually, dated December 4, 2006 and recorded in St. Tammany Parish on April 27, 2007; (3) A Federal Tax Lien against Trustee Cardwell and his wife, Debra, both individually, dated June 23, 2009 and recorded in St. Tammany Parish on June 29, 2009; and (4) A Judgment in favor of Asset against Trustee Cardwell, individually, dated July 27, 2010 and recorded in St. Tammany Parish the same day. **(R. Doc. 30-1, at 2)**.

[8] "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount … shall be a lien in favor of the United States upon all property, whether real or personal, belonging to such person." 18 U.S.C.A. § 6321.

11

being perfected. **(R. Doc. 30-1, at 4)**. The Bank asserts that a tax lien created by 26 U.S.C. § 6321 in after-acquired property becomes perfected when the debtor actually acquires the property. **(R. Doc. 30-1, at 4-5)**. In contrast, the Bank argues that liens created by state law become choate when the identity of the lienor, the property subject to the lien, and the amount of the lien are established. **(R. Doc. 30-1, at 5)**. The Bank avers that its mortgage became choate and perfected in the Property when the mortgage was recorded in St. Tammany Parish on September 11, 2007. **(R. Doc. 30-1, at 5)**. The Bank argues that the liens of Federal Defendant, the IRS, and Asset were not perfected in the Property until Trustee Cardwell acquired the property on August 17, 2012. **(R. Doc. 30-1, at 5)**. Thus, the Bank argues that its mortgage is superior.[9] **(R. Doc. 30-1, at 6)**.

Federal Defendant argues in opposition that its lien is entitled to primary lien treatment, re-urging its assertion that the MVRA commands the seniority of the lien. **(R. Doc. 31, at 5)**. Federal Defendant asserts that an order for payment of restitution becomes a lien on all property and rights to property of the defendant upon entry of judgment, which occurred in this case on December 5, 2006. **(R. Doc. 31, at 6)**. Federal Defendant further asserts that such a lien is perfected when a notice of lien is filed, which occurred in this case on April 27, 2007. **(R. Doc. 31, at 6)**. Accordingly, Federal Defendant argues that its lien primes the Bank's mortgage, which did not arise until September 11, 2007. **(R. Doc. 31, at 6)**. Federal Defendant avers that the

---

[9] The Bank goes on to assert that the lien of Federal Defendant is ranked second, the lien of the IRS is ranked third, and the lien of Asset is ranked fourth. **(R. Doc. 30-1, at 6)**.

Bank in its motion conflates perfection with attachment in reaching the erroneous conclusion that the Bank's mortgage is the superior lien. **(R. Doc. 31, at 8)**.

In reply to Federal Defendant's opposition, the Bank first argues that 18 U.S.C. § 3613(c) only permits a lien to attach to property the defendant owns, which did not occur in this case until Trustee Cardwell acquired the Property from the Trust in his individual capacity. **(R. Doc. 34, at 2)**. Thus, the Bank concludes that its mortgage primes Federal Defendant's lien, which was not perfected until the Sale occurred on August 17, 2012. **(R. Doc. 34, at 2)**. Next, the Bank argues that the after-acquired property principle is not applicable to the ranking of the Bank's mortgage against Federal Defendant's lien because this case does not involve the "same debtor"[10] acquiring property after both the federal and state liens have been recorded. **(R. Doc. 34, at 3)**. Finally, the Bank argues that its claim for attorney fees is superior because the Supreme Court's holding in *United States v. Pioneer American Insurance Co.*, 374 U.S. 84, 88 (1963), predates the 1966 Tax Lien Act, in which "Congress clearly overruled that decision."[11] **(R. Doc. 34, at 4)**.

## DISCUSSION

### I. Whether the Sale is a Nullity

The Louisiana Trust Code prohibits an individual trustee from "directly or indirectly buy[ing] or sell[ing] property for the trust from or to himself or his relative, employer, employee, partner, or other business associate, unless the trust instrument

---

[10] The Bank emphasizes that the Bank's debtor is the Trust, and Federal Defendant's debtor is Cardwell. **(R. Doc. 34, at 3)**.

[11] This argument is raised in response to Federal Defendant's assertion in Footnote 6 of its opposition that "[t]he *Pioneer* decision further holds that attorney fees are absolutely inferior regardless of the ranking of the Bank's security interest or what is provided for in the loan documents." **(R. Doc. 31, at 7)**.

13

provides otherwise, or unless specifically authorized by a court of competent jurisdiction, after a contradictory hearing." La. Stat. Ann. § 9:2085. In the absence of authority, "it is a breach of trust for the trustee personally to buy property held in the trust." 11 La. Civ. L. Treatise, Trusts § 14:3 (2d ed.).

Here, there is no dispute that Cardwell sold trust property in his capacity as trustee to his wife and himself in his individual capacity. There is also no dispute that Caldwell did not have court authorization to circumvent Article 2085. Thus, the Sale was authorized only if the language of the Trust instrument grants the trustee the requisite authority.

Louisiana Civil Code Article 2046 provides that when the words of a contract are clear and explicit, "no further interpretation may be made in search of the parties' intent" provided that the interpretation does not lead to "absurd consequences." La. Civ. Code art. 2046. "In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text." La. Civ. Code art. 2056. Where a contract is worded in general terms, "it must be interpreted to cover only those things it appears the parties intended to include." La. Civ. Code art. 2051.

Here, Pat Ray Cardwell established the Trust to benefit his grandchildren, provide them with an education, and enable them to maintain a respectable standing of living. **(*See* R. Doc. 18-3, at 3)**. Provision H of the Trust instrument begins by providing that "[t]he Trustee hereunder shall be subject to all of the duties imposed upon Trustees, and shall have to the fullest extent possible, all of the powers granted

14

to Trustees under the Trust Laws of the State of Louisiana as the same may, from time to time, be amended." **(*See* R. Doc. 18-3, at 3)**. While this suggests that the settlor intended for the trustee to be restrained by the duties imposed upon trustees by the Louisiana Trust Code—including the prohibition against self-dealing—the remainder of provision H and the entirety of provision L go on to provide:

> Without limitation upon any of the Trustee's other powers given by law, the Trustee is expressly given the power to do and perform any of the following in his discretion and without the necessity of any order or authorization of court … To purchase, sell, exchange, partition or otherwise acquire and dispose of trust property, at public auction or private sale for such purposes and upon such terms, as the Trustee may determine appropriate….

**(*See* R. Doc. 18-3, at 3)**. In light of the reference in Article 2085 to the necessity of either specific authorization by a court or language in the trust instrument permitting a trustee to buy or sell trust property to himself, this Court finds that the settlor intended to confer authority upon the Trustee to sell the Property at private sale without limitation. Accordingly, the August 17, 2012 sale was made in accordance with the trust instrument and is not null and void.

## II. Ranking of Liens

The parties do not dispute that the IRS's lien is primed by the Bank's mortgage. **(*See* R. Doc. 22, at 1)**. The issue before the Court is whether Federal Defendant's lien devolving from a restitution judgment obtained in December 2006 is primed by the Bank's mortgage.

The Mandatory Victims Restitution Act affords the United States broad authority to enforce a restitution order "against all property or rights to property of

the person fined," notwithstanding any other federal law. *U.S. v. Decay*, 620 Fd.3d 534, 539 (5th Cir. 2010). "Liens resulting from restitution judgments are treated like federal tax liens." *United States v. Henricks*, 886 F.3d 618, 625 (7th Cir. 2018); *United States v. Edward D. Jones & Co., L.P.*, 2011 WL 7025905 (E.D. Tex. Dec. 21, 2011). Courts look initially to state law to determine what rights the criminal defendant has in property the Government is seeking to reach. *Id*. Next, courts look to federal law to determine whether the criminal defendant's "state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *Id*.

Pursuant to 18 U.S.C. § 3613(c), upon entry of judgment an order for payment of restitution becomes a lien on all of the defendant's property and rights thereto. The lien is perfected when a notice of lien is filed. *See* 18 U.S.C. § 3613(d); 26 U.S.C. § 6323(f). Where property is acquired by the judgment debtor after a tax lien arises, that property is nevertheless reached by the lien. *See* 26 U.S.C. § 6321; *Atlantic States Constr., Inc. v. Hand, Arendall, Bedsole*, 892 F.2d 1530, 1534 (11th Cir. 1990).

Here, Cardwell pleaded guilty to one count of Bank Fraud on December 5, 2006 and was sentenced to serve jail time and make restitution to the victim bank in the principal amount of $162,440.78. **(*See* R. Doc. 22, at 3)**. The lien was perfected when the notice was filed in the conveyance records of St. Tammany Parish on April 27, 2007. **(*See* R. Doc. 22-1, at 2)**. The Bank's mortgage was recorded in St. Tammany Parish on September 11, 2007. **(*See* R. Doc. 18-1, at 4)**. Thereafter, the Property was acquired by Caldwell in his individual capacity on August 17, 2012. **(*See* R. Doc. 22-**

**1, at 3)**. Based on the foregoing, this Court finds that Federal Defendant's lien is senior to the Bank's mortgage.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the Bank's motions **(Rec. Docs. 18, 30)** are **DENIED**.

**IT IS FURTHER ORDERED** that Federal Defendant's requests for entry of summary judgment **(Rec. Docs. 22, 31)** are **GRANTED**. The parties shall submit a proposed form for final judgment within 14 days.

New Orleans, Louisiana, this 28th day of September, 2018.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE